IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION



| | |
|---|---|
| PATRICIA DANDRIDGE<br>2220 BRYAN PLACE SE<br>#204<br>WASHINGTON, DC 20020<br><br>Plaintiff,<br><br>v.<br><br>ROCHELLE CARAWAY<br>WINN RESIDENTIAL<br>305 37th STREET, SUITE B3, SE<br>WASHINGTON, DC 20019<br><br>Defendant. | Civil Action No.:<br><br><br><br><br>Jury Trial Demand |

## COMPLAINT

Comes now Plaintiff Patricia Dandridge, by and through counsel, and files this complaint against Rochelle Caraway.

### Jurisdiction

1. This Court has jurisdiction over the subject matter of this action under D.C. Code Ann. Sec. 11-921.

### Venue

2. Venue is proper in this court in that the action giving rise to this claim occurred in the District of Columbia.

### Parties

3. Plaintiff Patricia Dandridge, an African American female, was employed by Winn Management for three years.



4.  Defendant Rochelle Caraway is a former employee of Winn Management and agent of WDC-1 Apartments and was the most recent supervisor for Ms. Dandridge.

### Facts

5.  Ms. Dandridge, who is African American and lesbian, began employment as a porter with CIH Properties Inc. for WDC-1 Apartments in 2003. In her most recent position, she was supervised by Rochelle Caraway, a former site manager.

6.  Ms. Dandridge was responsible for maintaining the grounds at different apartment complexes owned by WDC-1 Apartments. Although Ms. Dandridge should have been one of two porters performing maintenance services at sixteen scattered properties, during most of Ms. Dandridge's tenure at Winn Residential, she performed all of the porter services for the scattered properties alone.

7.  While supervised by Caraway, Ms. Dandridge was subjected to disparate treatment, based on her sexual orientation and gender. Caraway explicitly stated to Ms. Dandridge that she did not like homosexuals and that she could treat Ms. Dandridge in any manner she desired because Ms. Dandridge was homosexual and no one would help her. Ms. Dandridge protested the discriminatory treatment she received from Caraway.

8.  Caraway frequently directed profanity at Ms. Dandridge at work and called her a "bitch." Caraway would allow everyone in the office, except Ms. Dandridge, to eat lunch in the office; but she would tell Ms. Dandridge to go eat lunch in the back of the building. Caraway would also call Ms. Dandridge trash and called Ms. Dandridge a bum and told her she needed to be outside picking up trash.

9.  In addition, Ms. Dandridge is aware that male porters employed by Winn Residential in Washington were paid a higher hourly rate than she was paid. Ms.

Dandridge worked with a male porter who was not required to perform any work, while Caraway required Ms. Dandridge to perform her job as well as the job of the male porter.

10. When Ms. Dandridge submitted paperwork for reimbursement for mileage, her supervisor either withheld the funds, or taxes were deducted from funds for her mileage. Ms. Dandridge reported the conduct of Caraway and disparity in pay to John Weikel, regional vice president for Winn Residential. Weikel told Ms. Dandridge that he would work to get her pay adjusted, but did not follow through on this issue.

11. On or near April 20, 2005, Ms. Dandridge met with Caraway. Caraway stated that John Weikel told her to tell Ms. Dandridge that he wanted Ms. Dandridge to provide maintenance services on sixteen scattered properties everyday or she would be terminated. Ms. Dandridge responded by asking for a meeting with Caraway and Weikel to clarify his demand. Caraway ignored Ms. Dandridge's request.

12. On that same day, Ms. Dandridge injured her hand on the job. Although Ms. Dandridge submitted proper medical documents to support her injury, Caraway tore up the medical documents in her presence and indicated that Ms. Dandridge would not be allowed sick leave and she would be terminated if she did not complete the work on all of the scattered properties.

13. On April 22, 2005, Ms. Dandridge was terminated. Following the termination of Ms. Dandridge, Caraway appointed several temporary employees to perform porter services at the sixteen scattered properties. Ms. Dandridge later met with Weikel and was told that she would be placed into another position. When Ms. Dandridge attempted to follow up with Weikel, he refused to meet with her.

## Count I

## Violation of the District of Columbia Human Rights Act

(Dandridge v. Caraway)

Ms. Dandridge realleges and incorporates the allegations of all paragraphs above as if fully set forth herein.

14. At all pertinent times, Winn Management Group and WDC-1 Apartments were employers subject to provisions of D.C. Human Rights Act, 2-1401 et seq. (DCHRA), of the District of Columbia Code. Defendant Caraway is an individual subject to provisions of the DCHRA.

15. At all pertinent times, Ms. Dandridge was an employee entitled to protection under the D.C. Human Rights Act.

16. The D.C. Human Rights Act prohibits discrimination in employment in the terms, conditions and privileges of employment, based on an individual's gender and sexual orientation, and prohibits retaliation for engaging in protected activity or opposing prohibited acts under the DCHRA.

17. In violation of the D.C. Human Rights Act, Defendant knowingly and intentionally engaged in unlawful discrimination and retaliation, including but not limited to: subjecting Ms. Dandridge to disparate treatment in work assignments and a hostile work environment based on her gender and sexual orientation; causing Ms. Dandridge to perform the tasks of two porters while paying Ms. Dandridge at a lower rate than male porters; allowing Ms. Dandridge to be compensated at a rate lower that the pay provided to male porters; and causing her employment to be terminated based on her gender and

sexual orientation and/or in retaliation for complaining about discriminatory treatment by Caraway.

WHEREFORE, Plaintiff prays as follows:

A. Enter judgment against the Defendant.

B. That the court award to Ms. Dandridge damages in an amount equal to all of her accumulated lost wages and benefits, including back pay, front pay and benefits; compensatory damages and punitive damages for the financial and emotional harm caused by Defendant, including prejudgment and post-judgment interest and any other damages permitted under the D.C. Human Rights Act;

C. Award payment of all fees, costs, expenses, including attorney's fees and expert fees;

D. That the Court award Ms. Dandridge such other relief as to which she may be deemed entitled.

Respectfully submitted,

_____
David A. Branch #438764
Law Offices of David A. Branch, PC
1825 Connecticut Avenue, N.W.
Suite 690
Washington, D.C. 20009
(202) 785-2805 phone
(202) 785-0289 fax

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all counts.

5